J-S16035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAYMOND N. WASHINGTON, | : | |
| | : | |
| Appellant | : | No. 905 MDA 2018 |

Appeal from the Judgment of Sentence May 3, 2018
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0002712-2017

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 16, 2019**

Raymond N. Washington ("Washington") appeals from the judgment of sentence imposed following his convictions of one count of escape, and two counts of resisting arrest.[1]  We affirm.

On May 2, 2017, Detectives Dennis Simmons ("Detective Simmons") and Donald Heffner ("Detective Heffner") (collectively, the "detectives") were patrolling near the 1200 block of Derry Street, Harrisburg, Pennsylvania.  At approximately 3:00 p.m., the detectives observed Washington sitting on the stoop of a house at 1222 Derry Street, and consuming a 24-ounce can of Budweiser.

The detectives approached Washington, advised him that they were police officers, and asked him if he lived at that residence.  When Washington indicated that he did not live there, the detectives advised him that he was in

---

[1] 18 Pa.C.S.A. §§ 5121(a), 5104.

violation of Harrisburg's open-container ordinance, and asked him for identification. Washington did not respond to the detectives' request. Detective Simmons advised Washington that they were going to issue him a ticket for the open container. Washington stood up and placed his hands in his pockets, but otherwise failed to respond to the detectives' request for identification, and exhibited signs that he was preparing to flee.

Fearing that Washington was going to run, Detective Heffner advised him that he was going to be frisked for weapons. When the detectives attempted to frisk Washington, Washington pulled away from the detectives and attempted to flee. In response, the detectives tackled Washington to the ground and tried to handcuff him. Washington wildly swung his arms, striking Detective Heffner in the face with his elbow. Washington escaped the detectives' grasps and ran a few feet, before Detective Heffner tackled him to the ground. Washington shoved the detectives off of him and ran away. A group of onlookers cheered for Washington as the detectives yelled at him to stop and that he was under arrest. Detective Simmons attempted to pursue Washington but lost sight of him during the chase. Detective Heffner returned to the police vehicle to call for back-up. A third officer arrived at the scene, discovered Washington hiding under a nearby stairwell, and detained him until the detectives arrived and arrested him.

As a result of attempting to detain Washington, Detective Heffner suffered contusions to his right arm and backside, and a bruise to his nose, and Detective Simmons suffered contusions to his left arm.

Following a jury trial, Washington was found guilty of the above-mentioned offenses. Washington was sentenced to an aggregate term of 9 to 18 months in prison. Washington filed a timely Post-Sentence Motion, challenging the weight of the evidence, which was denied. Washington filed a timely Notice of Appeal and a Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Washington raises the following questions for our review:

1. Whether the verdict was against the weight of the evidence that it shocked one's sense of justice where the testimony indicated that the interaction was just a "mere scuffle"?

2. Whether the verdict was against the weight of the evidence that it shocked one's sense of justice as to whether [Washington] was in police custody?

Brief for Appellant at 6.

In both issues presented on appeal, Washington purports to challenge the weight of the evidence.[2] Therefore, we will address his claims together. In his first claim, Washington alleges that his actions did not create a substantial risk of injury to the detectives, or justify substantial force to

_____

[2] Washington's legal arguments appear to challenge the sufficiency of the evidence. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (stating that sufficiency of the evidence claims are distinct from weight of the evidence claims, as there are different standards of review as well as separate remedies). To the extent that Washington raises sufficiency of the evidence claims, they are waived, because they were not raised in his court-ordered Concise Statement. *See Commonwealth v. Lemon*, 804 A.2d 34, 36 (Pa. Super. 2002) (stating that "issues not included in a Pa.R.A.P. 1925(b) statement are deemed waived on appeal.").

overcome. *Id.* at 13-16. Washington argues that he did not deliberately strike the detectives. *Id.* at 13-14. Washington claims that he "merely attempted to squirm, wiggle, twist and shake his way free of the [d]etectives." *Id.* According to Washington, his actions did not justify the detectives' actions of tackling him to the ground. *Id.* at 16.

In his second claim, Washington alleges that he was not detained prior to fleeing from the detectives. *Id.* at 17-18. Washington argues that the detectives never told him that he was under arrest prior to fleeing, and Washington could not hear the detectives' directive to stop over the sound of the onlookers cheering. *Id.* at 18.

> The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, the trial court found that the verdict, based upon the substantial evidence found credible by the jury, did not shock one's conscience. ***See*** Trial Court Opinion, 10/3/18, at 5-11. We incorporate herein the trial court's analysis. ***See id.*** Based upon our review, we conclude that the trial court did not abuse its discretion in denying Washington's weight of the evidence claims. ***See Commonwealth v. Gibbs***, 981 A.2d 274, 282 (Pa. Super. 2009) (stating that "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/16/2019

OCT 09 2018

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
| | : DAUPHIN COUNTY, PENNSYLVANIA |
| | : |
| vs. | : NO. CP-22-CR-2712-2017 |
| | : |
| | : 905 MDA 2018 |
| | : |
| RAYMOND N. WASHINGTON | : CRIMINAL MATTER (APPEAL) |
| Appellant | : |
| | : |

## OPINION

### [Pursuant to Pa.R.C.P. 1925(a)]

Presently before this Court is the Appeal filed in the above-captioned matter. This opinion is written pursuant to Pa.R.A.P. **1925(a)**.

### PROCEDURAL BACKGROUND

Following a jury trial commencing on March 13, 2018 and concluding on March 14, 2018, Raymond N. Washington (hereinafter "Appellant") was found guilty of 2 Counts of Resisting Arrest[1] and 1 Count of Escape.[2] On May 3, 2018, Appellant appeared for sentencing on the above-captioned docket. On all Counts to run concurrently, Appellant was sentenced to a period of incarceration of no less than nine (9) months, no more than eighteen (18) months in Dauphin County Prison, no additional fine or court costs. Appellant had nine (9) months time credit and was immediately paroled.

On May 15, 2018, Appellant filed a post-sentence motion for a new trial or arrest of judgment. Appellant's post-sentence motion was denied on May 16, 2018. A timely Notice of Appeal was filed on May 31, 2018. In compliance with our 1925(b) Order, Appellant filed a

---

[1] 18 Pa.C.S.A §5104
[2] 18 Pa.C.S.A §5121 §§A. The Judge found the Defendant guilty of the summary offense of unlawful possession of an open container in violation of LO §1125 §§02.

Concise Statement of Errors Complained of on Appeal Pursuant to Appellate Rule of Procedure 1925(b) ("Concise Statement") raising the following issues for review:

**Statement of Errors Complained of on Appeal**

A.     The trial court erred in denying Appellant's Post-Sentence Motion where the verdict was against the weight of the evidence so as to shock one's sense of justice where the Commonwealth failed to prove beyond a reasonable doubt that the Appellant took a substantial step in resisting the police officers' arrest, when the officers themselves testified to the encounter as being a "mere struggle."

B.     The trial court erred in denying Appellant's Post-Sentence Motion where the verdict was against the weight of the evidence so as to shock one's sense of justice where the Commonwealth failed to prove beyond a reasonable doubt that the Appellant was actually in police custody when he ran; therefore negating the appropriateness of the escape charge.

## FACTUAL BACKGROUND

The testimony at trial revealed that on May 2, 2017, Detective Donald Heffner (hereinafter "Det. Heffner"), a detective with the City of Harrisburg, was working with his partner, Dennis Simmons (hereinafter "Det. Simmons"), in a vice unit. Transcript of Proceedings, Jury Trial, March 13-14, 2018, pages 14-15 (hereinafter "N.T. at ____"). On May 2nd, Det. Heffner was patrolling the 1200 block of Derry Street for quality of life issues because this area is known for its high drug and violence. (N.T. at 15). On this day, Det. Heffner was wearing a vest with "police" markings on it with his holster exposed. (N.T. 21 and 23).

At 1222 Derry Street, the officers encountered Appellant sitting on a stoop of a residence drinking a beer. (N.T. at 17). The detective identified himself as a police officer (N.T. 23) and when asked, Appellant admitted he did not live at the residence where he was sitting and he stood up. (N.T. at 17). The detective then asked Appellant for identification. (N.T. 17 and 20-21). Appellant put his left hand in his pocket but did not pull out identification. (Id.) He was asked to produce identification several times but did not produce it. Instead of providing the detective with

identification, Appellant started looking around, and shifting his weight. (N.T. at 17-18). Det. Heffner identified his suspicious behavior as a precursor to flight. (N.T. at 18). Det. Heffner told Appellant that he was just going to give him a citation and to relax. (N.T. at 18). However, since Appellant continued this suspicious behavior, the officers believed that he was going to run. (Id.) Unsure of exactly why the defendant was behaving this way, and due to the fact that the neighborhood was a known high crime area, Det. Heffner tells Appellant that he was going to pat him down for a weapon. (Id.) Det. Heffner testified that he grabbed Appellant's right arm and as soon as he touched his arm, Appellant took off running. (Id.) At this point, the police yell, "police, you're under arrest." (N.T. at 20).

The officers tackle Appellant onto the sidewalk. (N.T. at 18). Appellant was swinging himself around so that the officers could not get him under control. (Id.) Appellant elbowed Det. Heffner in the nose and knocked his glasses off. (Id.) Appellant then gets up and knocks Det. Simmons off of him. (Id.) However, Det. Heffner still had a hold of him and took him back to the ground. Appellant was flailing his arms and maneuvering his legs so that it was difficult to keep control of him. Det. Heffner tried to bring him back to the ground but lost his grasp. Det. Heffner testified that it was during this engagement with Appellant that he yelled, "stop, this is police, you are under arrest." (N.T. at 29). Appellant then took off running west on Derry Street. (N.T. at 18). At that time, Det. Heffner saw Det. Simmons running after Appellant. (N.T. at 18). Det. Heffner picked up the police radio that Det. Simmons dropped and got into his car to look for his partner who is following Appellant on foot without his radio. (N.T. at 18-19).

Det. Heffner found Det. Simmons who indicated that he saw Appellant running between two addresses on Mulberry street. (Id.) They radio in that they were looking for this individual and eventually Det. Ishman found Appellant under a stoop. (Id.)

Det. Heffner testified that as a result of the encounter with Appellant, he suffered a bruised nose, a nice scrape to the right elbow and broken glasses. (N.T. 21).

Det. Simmons' version of the events of May 2, 2017 are consistent with Det. Heffner's and are as follows. Det. Simmons was a Harrisburg City police officer assigned to the Organized crime and Vice Control Unit as a detective. He has been with the police dept since 2005 and the vice unit since 2013. (N.T. at 31). His duties include investigating crimes involving drugs and either sale, use, sales or use of stolen items, violent crimes in progress and quality of life issues. (Id.) He was working in this capacity on May 2, 2017. Det. Simmons testified that on May 2, 2017, he wore plain clothes underneath a raid jacket with the word "police" on the front and back, along with Det. Heffner. (N.T. at 32). On May 2, 2017, he observed Appellant seated on a porch at the 1222 Derry Street residence holding a beer can and it appeared that he was drinking it. (N.T. at 34). Since this is a violation of the open container ordinance, the detectives walked over and introduced themselves to Appellant as police officers. (N.T. at 34-35). Appellant acknowledged that he did not reside at the address of the stoop where he was sitting. (N.T. at 36).

Det. Simmons described that after explaining to Appellant that he was violating the city ordinance, Appellant was asked for identification. (N.T. at 36). At that time, Appellant stood up and placed his hands in his pockets. (Id.) His body tensed and he began shifting his weight back and forth. (Id.) He failed to maintain eye contact and was visually scanning the area around them. (N.T. at 36). In Det. Simmons' training and experience as a police officer, this behavior indicated to him that Appellant was looking for somewhere to escape. (N.T. at 37). The detective asked Appellant several times to remove his hands from his pockets but he did not comply. (Id.) Because of Appellant's behavior, Det. Heffner advised Appellant that he would have to frisk him for weapons. (N.T. at 38). As Det. Heffner attempted to grab Appellant's right arm to frisk him,

Appellant pulled away and ran. (N.T at 38). At that time Det. Simmons grabbed Appellant's left arm and the three of them fell to the ground. (Id.) At that point, Appellant was flailing his arms and refusing to listen to verbal commands to show them his hands. (Id.) Appellant elbowed Det. Heffner as they were struggling and managed to get up. (Id.) Det. Heffner dragged him to the ground again. (Id.) At least twice, Appellant managed to evade Det. Heffner and get to his feet again. (Id.) Det. Simmons ran after him yelling, "Police. You're under arrest. Stop." (Id.) As Det. Simmons continued the chase, Appellant led him across a busy street during the beginning of rush hour traffic which slowed the detective down. (N.T. at 39-40). Det. Simmons testified that he told Appellant that he was under arrest at least three times.[3] (N.T. at 40). As the detectives struggled with Appellant the first time, the detectives directed him to put his hands behind his back and that he was under arrest but Appellant did not comply. (N.T. at 40-41).

Detective Ishman is a ten-year veteran of the Harrisburg City Police. He began working with the Vice Unit in July of 2017. (N.T. at 55). On May 2, 2017 he was assigned to the Harrisburg Police Street Crimes Unit. (Id.) He testified that on this day, a call came over the radio to assist detectives in a foot chase in the 1200 block of Derry Street and he responded. (N. T. at 56). Det. Ishman located Appellant and took him into custody. (N.T. at 58).

## DISCUSSION

**A.** **THE WEIGHT OF THE EVIDENCE SUPPORTS THE GUILTY VERDICT OF TWO COUNTS OF RESISTING ARREST**

Appellant asserts that this Court erred in denying his post-sentence motion for a new trial or arrest of judgment because the verdict was against the weight of the evidence so as to shock

---

[3] As Det. Simmons chased the defendant he yelled, "Police. You're under arrest." three times. (Id.) As the defendant crossed Mulberry Street, he yelled it again. (Id.)

one's sense of justice as the Commonwealth failed to prove beyond a reasonable doubt that the Appellant took a substantial step in resisting the police officers' arrest, when the officers themselves testified to the encounter as being a "mere struggle."

It is well-established in Pennsylvania that:

> A true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' **but questions which evidence is to be believed.** An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Indeed, an appellate court should not entertain challenges to the weight of the evidence since [the appellate court's] examination is **confined to the "cold record"[and] may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.**

Commonwealth v. Galindes, 786 A.2d 1004, 1011 (Pa. 2001) (internal citations omitted). In reviewing the trial court's denial of a motion for a new trial based upon a challenge to the weight of the evidence, the appellate court will give "the greatest consideration to the findings and reasons advanced by the trial judge." Commonwealth v. Widmer, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

In this criminal matter, Appellant was charged with two counts of resisting arrest,[4] which is defined as a misdemeanor of the second degree if,

> with the intent of preventing a [police officer] from effecting a lawful arrest <u>or</u> discharging any other duty, the person creates a substantial risk of bodily injury to the [police officer] or anyone else <u>or</u> employs means justifying or requiring substantial force to overcome the resistance."

18 Pa.C.S.A. §5104 (emphasis added). The statutory commentary instructs that this charge cannot be extended to what would be considered "minor scuffling" "which occasionally takes place during

---

[4] One count against Detective Heffner and one count against Detective Simmons.

an arrest." (Id.) Additionally, the statute extends to "the discharge of any duty, including the effecting of a lawful detention, by a public servant." 18 Pa. Stat. and Cons. Stat. Ann. § 5104 (West).

## 1. Intent to prevent an officer "from effecting a lawful arrest <u>or discharging any other duty</u>,"

In this case, the weight of the evidence clearly supports the jury's finding of guilt on both counts of resisting arrest. The first element of the crime of resisting arrest, the intent to prevent an officer "from effecting a lawful arrest <u>or discharging any other duty</u>," was proven by the Commonwealth beyond a reasonable doubt. The weight of the evidence supports a finding that Appellant had the intent of preventing the officers from issuing him a citation and effecting a lawful arrest by fleeing at the point in time when the officers attempted to pat him down. The evidence at trial revealed that Det. Heffner and Det. Simmons encountered Appellant sitting on a stoop, where he did not reside, drinking a beer in violation of a city ordinance. The evidence revealed that the officers informed Appellant that they were police officers and that they were wearing vests with "police" markings on them. The officers then informed Appellant that they were going to issue him a citation for violation of the local ordinance prohibiting unlawful possession of an open container and requested to see his identification. Instead of providing police with identification, Appellant began to exhibit what the detectives are trained to recognize as signs of precursors to flight. Unsure of why Appellant was behaving this way, and suspecting that he may have a weapon in what is known to be a high crime neighborhood, the detectives informed Appellant that they were going to pat him down for a weapon. As the detective put his hand on the Appellant's arm, Appellant began to flee on foot, at which point the officers yell to him that they were the police and that he was under arrest. Clearly, based upon the foregoing, it would not be against the weight of the evidence for a jury to conclude that the first element of the charge of

resisting arrest was met, that is, that Appellant fled with the intent of preventing the officers from issuing a citation and/or effecting a lawful arrest.

## 2. The fleeing suspect either "creates a substantial risk of bodily injury to the officer or anyone else or employs means justifying or requiring substantial force to overcome resistance."

Next, the resisting arrest statute provides for two mutually exclusive alternatives that would support the charge. The fleeing suspect either creates a substantial risk of bodily injury to the officer or anyone else, "or employs means justifying or requiring substantial force to overcome resistance." 18 Pa.C.S.A. §5104. Appellant's actions unquestionably fall within the ambit of this portion of the statute also. Appellant's encounter with the police officers amounted to more than a "mere struggle" or scuffle, and the testimony of the officers support this. The evidence overwhelmingly demonstrates that that the force of two officers could not overcome the Appellant's resistance and resulted in physical injuries to the officers, thus satisfying the element of substantial force. Accordingly, the Court did not err in denying Appellant's post-sentence motion for a new trial based upon a challenge to the weight of the evidence.

Since the weight of the evidence clearly established that the force of two officers could not overcome the Appellant's resistance thus satisfying the element of substantial force, our analysis need not include whether Appellant's flight created a substantial risk of bodily injury to the officers. However, the evidence presented at trial sufficiently showed that during Appellant's attempt to intentionally avoid arrest by fleeing, he also created a substantial risk of bodily injury to Detectives Heffner and Simmons.

> It is well settled in this Commonwealth that where the circumstances of a suspect's flight exposes a pursuing officer or anyone else to a substantial risk of injury, a conviction for resisting arrest is proper. **Section 5104 does not require evidence of serious bodily injury, nor does it require actual injury. Merely exposing another to the risk of such injury is sufficient to sustain a conviction** under

5104. Commonwealth v. Lyons, 382 Pa. Super. 438, 448 (1989). However, … a suspect's mere flight to escape arrest does not violate 5104.

In Interest of Woodford, 420 Pa. Super. 179, 183 (1992)(emphasis added).

At trial, the evidence presented revealed that as Det. Heffner attempted to grab Appellant's right arm to frisk him, Appellant pulled away and started running. (N.T at 38). However, this was not a case of just a mere flight to escape arrest. Not only did the Appellant engage in a physical combat to resist arrest that resulted in actual bodily injury to both officers, the chase exposed the officers to a substantial risk of further bodily injury.

The evidence revealed that the officers had to tackle Appellant onto the sidewalk in an attempt to subdue him. (N.T. at 18). Appellant was swinging himself around so that they cannot get him under control. (Id.) Appellant elbowed Det. Heffner in the nose and knocked his glasses off. (Id.) Appellant got up and knocked Det. Simmons off of him. (Id.) However, Det. Heffner still had a hold of him and took him back to the ground. Appellant was flailing his arms and maneuvering his legs so that it was difficult to keep control of him. Det Heffner tried to bring Appellant back to the ground but loses his grasp. Det. Heffner testified that it was during this engagement with Appellant that he yelled, "stop, this is police, you are under arrest." (N.T. at 29). Appellant then took off running again, west on Derry Street. (N.T. at 18). At this time, Det. Heffner saw Det. Simmons running after Appellant. (N.T. at 18). Although it is not necessary to show actual bodily injury, Det. Heffner testified that as a result of the encounter with Appellant, he suffered a bruised nose, a nice scrape to the right elbow and broken glasses. (N.T. 21).

Most significantly, the evidence showed that Appellant led the detectives on a chase (Det. Simmons on foot and Det. Heffner by car) that required them to cross a busy street during the beginning of rush hour traffic. (N.T. at 39). This exposed the detectives to a substantial risk that

one or more of the officers in pursuit of Appellant could have suffered bodily injury as a result of being led into the inherently dangerous situation of chasing Appellant through busy rush-hour traffic. *See* Commonwealth v. Lyons, 382 Pa. Super. 438 (1989) (*appellant's struggle with two deputies in the middle of a frigid stream with rocky uneven bed was sufficient to meet the requirement of substantial risk of injury to the arresting officer*). Accordingly, the weight of the evidence supports the guilty verdict of two counts of resisting arrest.

**B.    THE WEIGHT OF THE EVIDENCE SUPPORTS THE GUILTY VERDICT OF ESCAPE**

Appellant asserts that the trial court erred in denying Appellant's Post-Sentence Motion because the verdict was against the weight of the evidence where the Commonwealth failed to prove beyond a reasonable doubt that Appellant was actually in police custody when he ran thereby negating the appropriateness of the escape charge.

In Pennsylvania, a person commits the offense of "escape" "if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." 18 Pa.C.S.A. §5121(a). The definition of "official detention" "means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation **or any other detention for law enforcement purposes** ...." 18 Pa.C.S.A. §5121(e)(emphasis added).

In the instant case, the officers encountered Appellant sitting on the stoop of a residence that was not his, drinking a beer, in violation of a city ordinance prohibiting possession of an open container. (N.T. at 17). The detective identified himself as a police officer and informed Appellant that he was going to issue him a citation. (N.T. at 18 and 23). At this point in time, Appellant is "detained for law enforcement purposes." (See 18 Pa.C.S.A. §5121(e)). However, before the

officer could issue the citation, Appellant took off running, thereby unlawfully removing himself from official detention. Accordingly, the weight of the evidence supported a conviction of the crime of Escape.

## CONCLUSION

Accordingly, we ask the Superior Court of Pennsylvania to affirm the judgment of sentence imposed by this Court on May 3, 2018, as well as the denial of Appellant's post-sentence motion on May 16, 2018, and dismiss the appeal in this matter.

Date: __10/3/18__

Respectfully Submitted:

_____
John F. McNally, III, Judge

Distribution:
The Superior Court of Pennsylvania, Pennsylvania Judicial Center, P.O. Box 62435, 601 Commonwealth Avenue, Suite 1600, Harrisburg, PA 17106
Court Administration (criminal)
Landa Lakisha Porter, Esquire, District Attorney's Office, 101 Market Street, Ste 205, Harrisburg, PA 17101
Megan Caggianelli, Esquire, Dauphin County Public Defender's Office, 2 S 2nd Street, 2nd Floor, Harrisburg, PA 17101